■ SANDRA FORD, as Administrator of the Estate of KYONDA E. FAULKNER, Deceased, Plaintiff, v ALBANY MEDICAL CENTER, Defendant. EUGENE R. SPADA, Appellant-Respondent; CHARLES R. HARDING, Respondent-Appellant. [724 NYS2d 795] —Lahtinen, J. Cross appeals from an order of the Supreme Court (Teresi, J.), entered October 20, 2000 in Albany County, which, *inter alia*, denied Eugene R. Spada's motion to find that a contractual relationship existed between him and Charles R. Harding.

In February 1998, plaintiff consulted with attorney Eugene R. Spada regarding a possible medical malpractice action

pertaining to the treatment received by her daughter at defendant hospital. Using documents provided by plaintiff, Spada obtained an expert medical opinion that a viable medical malpractice case existed.

By letter dated April 8, 1998, attorney Charles R. Harding informed Spada that plaintiff had retained his office to proceed with the medical malpractice action and requested that Spada sign a consent to change attorney form. The letter acknowledged that plaintiff had originally retained Spada and agreed to split the counsel fees in "an equitable manner." On April 9, 1998, Spada had a telephone conversation with Harding wherein the attorneys agreed that Spada would receive 33.33% of any counsel fee. Spada, on the same day, wrote to Harding asking for confirmation of the agreement in writing. On May 7, 1998, Harding sent Spada a check to reimburse Spada's disbursements but made no mention of any agreement to split counsel fees. On May 12, 1998, Spada wrote Harding requesting that Harding forward the counsel fee agreement as soon as possible. Spada thereafter received a letter on Harding's legal letterhead, dated May 19, 1998, which stated that "[i]n response to your May 12, 1998 letter regarding legal fees, I agree to the split of 66.66% to myself and 33.33 to your firm. Thank you."

The medical malpractice case was eventually settled resulting in a fee which Supreme Court determined to be $99,701.48 (see, Judiciary Law § 474-a). Spada petitioned Supreme Court for an order directing payment of 33.33% of the fee to him in accordance with the parties' agreement and Harding cross-petitioned for an order extinguishing Spada's claim for counsel fees.

Supreme Court determined that Spada had a lawyer-client relationship with plaintiff entitling him to a legal fee based on quantum meruit to be determined at a hearing,* but that the May 19, 1998 letter was sent from Harding's law office without Harding's authorization and, therefore, did not create a binding agreement regarding the split of counsel fees. Spada appeals from that part of Supreme Court's order which rejected his claim that he and Harding entered into an enforceable fee split agreement and Harding cross-appeals from the determination that Spada had been retained by plaintiff.

Spada argues that Harding's May 19, 1998 letter legally

---

* Spada has not appealed from Supreme Court's subsequent determination after a hearing (for which no order appears in the record) that he performed 3% of the work on the case and was entitled to counsel fees of $2,991.

bound Harding to pay him 33.33% of the earned legal fee and that Supreme Court erred by denying him a contractual lien. Harding claims that while Supreme Court correctly determined that there was no contractual relationship between he and Spada, it erred in finding that Spada had been retained by plaintiff in the absence of a written retainer agreement (*see*, Code of Professional Responsibility DR 2-106 [d] [22 NYCRR 1200.11 (d)]) or, at a minimum, without first conducting a hearing.

Initially, we agree with Supreme Court that Spada and plaintiff had an attorney-client relationship. Despite plaintiff's affidavit insisting that no such relationship existed, the record shows that she visited his office on more than one occasion in connection with her possible medical malpractice case, left documents pertaining to that case at his office to enable him to pursue a course of action and signed a consent to change attorney form (*see*, CPLR 321 [b] [1]) to substitute Harding as her new attorney. Harding, in turn, acknowledged in writing Spada's representation of plaintiff. Clearly, plaintiff met with Spada regarding a specific case which Spada undertook to prepare, an indicia of an attorney-client relationship (*see*, *Sucese v Kirsh*, 199 AD2d 718, 719). In addition, the actions of plaintiff, Spada and Harding subsequent to her initial consultation with Spada fully support Supreme Court's determination that Spada and plaintiff had an attorney-client relationship (*see*, *McLenithan v McLenithan*, 273 AD2d 757, 758; *C.K. Indus. Corp. v C.M. Indus. Corp.*, 213 AD2d 846, 848). Finally, the absence of a written retainer agreement does not require a different conclusion, especially since plaintiff had not yet been authorized to act as the personal representative of her daughter's estate when Spada was discharged.

Spada next claims that he had an enforceable agreement with Harding whereby he was to receive 33.33% of the total counsel fee ultimately recovered. Upon the facts presented here, even though we disagree with Supreme Court's conclusion that the attorneys did not reach an agreement as to a fee split (*see*, *Hallock v State of New York*, 64 NY2d 224, 231; *FDIC v Providence Coll.*, 115 F3d 136, 141), we find that such an agreement is unenforceable because it violates Code of Professional Responsibility DR 2-107 (a) (2) (22 NYCRR 1200.12 [a] [2]), which provides:

"(a) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associates of the lawyer's law firm, unless: * * *

"(2) The division is in proportion to the services performed

by each lawyer or, by a writing given to the client, each lawyer assumes joint responsibility for the representation."

The plain language of that portion of the Disciplinary Rule directs that where each lawyer does not assume joint responsibility for a client's representation in writing, the division of any fee must be in proportion to the services performed by each lawyer. Here there is absolutely no question that Spada did not assume joint responsibility for plaintiff's representation in writing or otherwise (*cf., e.g., Oberman v Reilly*, 66 AD2d 686, 687, *lv dismissed* 48 NY2d 654; *Jontow v Jontow*, 34 AD2d 744). As a consequence, Spada's claim for 33.33% of the counsel fee to be paid in this action based solely upon his purported agreement with Harding cannot be upheld. Accordingly, we agree that Supreme Court, after a hearing, properly computed Spada's fee on a contingent fee percentage based on quantum meruit (*see, Lai Ling Cheng v Modansky Leasing Co.*, 73 NY2d 454, 458) and appropriately awarded Spada 3% of the total fee.

Mercure, J. P., Peters, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, without costs.